IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LARESSA NEUMAN and CHAD NEUMAN, *as next friends of B.N.*, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:22-CV-1212-RP |
| GEORGETOWN INDEPENDENT SCHOOL DISTRICT, | § § § § | |
| Defendant. | § § | |

## ORDER

Before the Court is Defendant Georgetown Independent School District's ("GISD") Motion to Dismiss Plaintiffs' Second Amended Complaint. (Mot., Dkt. 29). Plaintiffs LaRessa Neuman and Chad Neuman, as next friends of B.N., (the "Neumans") filed a response. (Resp., Dkt. 32). GISD filed a reply. (Reply, Dkt. 34). Having considered the parties' briefs, the record, and the relevant law, the Court finds that GISD's motion should be granted.

### I. BACKGROUND

#### A. Factual Background

The Neumans bring this action as next friends of their minor child, B.N., who was previously a student at Benold Middle School within the Georgetown Independent School District in Georgetown, Texas. (2d. Am. Compl., Dkt. 27, at 2). The Neumans allege that GISD "targeted [B.N.] and allowed others under its control with its full consent, approval and affirmation to target [B.N.] based on her brown color" in "clear violation of Title VI" of the Civil Rights Act of 1964. (*Id.* at 3). As a result of this discrimination, the Neumans withdrew B.N. from GISD and sent her to private school. (*Id.*).

1

The Neumans' allegations of a Title VI violation seem to arise from two GISD investigations into students directing racial slurs towards B.N. (*Id.* at 7–8). The Neumans allege that Benold Middle School students referred to B.N. as "monkey" and "n*****" and told her to go "pick cotton" on multiple occasions. (*Id.* at 5). After being notified by the Neumans on May 16, 2022 that a student called B.N. a "monkey" and the substitute teacher did nothing to stop the student, Brandon Jayroe ("Principal Jayroe"), the principal of Benold Middle School, conducted an investigation. (Ex. A, Dkt. 27, at 14). This first investigation concluded on June 2, 2022. (*Id.*). Principal Jayroe found that both B.N. and the other student used the word "monkey" in dialogue with one another, that the teacher redirected the students, and that the conduct did not meet the definition of bullying or harassment as outlined in state law, federal law, or school board policy. (*Id.* at 14–15).

On June 1, 2022, the Neumans' attorney sent a letter to the general counsel for GISD. (Ex. B, Dkt. 27, at 17). The letter alleged that GISD staff were harassing B.N. in retaliation for her mother's participation in a protest of GISD's refusal to expel students after they sexually attacked another student. (This incident did not involve B.N.). (*Id.* at 18–19). The letter further alleged that several GISD teachers were failing to meet B.N.'s special needs accommodations and were failing to "stop classmates from calling [B.N.] a monkey or a n***** or telling her to go pick cotton." (*Id.* at 20–22). In response to this letter, Sue Harrison ("Harrison"), the director of GISD's human resources department, and Dana Johnson, the director of GISD's special education department, conducted a second investigation. (2d. Am. Compl., Dkt. 27, at 8; Ex. C, Dkt. 27, at 25). This second investigation began on June 14, 2022 and concluded on July 20, 2022. (Ex. C, Dkt. 27, at 25). The second investigation concluded that Principal Jayroe had "followed the GISD Student Code of Conduct" in completing the first investigation and that the "allegations of retaliation are unjustified."

2

(*Id.* at 28). It also found "no evidence of prohibited discrimination, harassment, or retaliation" by GISD teachers or administrators. (*Id.*).

In their second amended complaint, the Neumans claim these were "sham" investigations that "make it clear that Defendant GISD would continue to allow and even intentionally encourage, condone and accept racist acts against [B.N.]." (2d. Am. Compl., Dkt. 27, at 7). The Neumans also assert that Harrison "willfully and purposefully ensur[ed] that no information or testimony would come to light to show the horrific, intentional, malicious, pervasive and purposeful racial discrimination and harassment that [B.N.] was forced to suffer at the hands of Defendant GISD" when Harrison conducted the second investigation. (*Id.* at 9).

### B. Procedural Background

The Neumans filed their original complaint in this action on November 16, 2022. (Dkt. 1). They filed their first amended complaint on March 3, 2023, (Dkt. 18), after voluntarily dismissing several defendants from the case. (Dkt. 17). As the only remaining defendant, GISD filed a motion to dismiss the Neumans' first amended complaint, (Dkt. 20), which the Court granted without prejudice on October 3, 2023, (Dkt. 26). In its order, the Court found that the Neumans' first amended complaint failed to sufficiently plead a Title VI claim. (*Id.* at 5–9). The Court also found that it was unclear whether the Neumans were required to exhaust their administrative options before filing a suit in federal court pursuant to the Individuals with Disabilities Education Act ("IDEA") because the complaint did not clearly allege any damages. (*Id.* at 4–5). The Neumans filed a second amended complaint on October 24, 2023. (Dkt. 27). GISD then filed a motion to dismiss the second amended complaint, (Dkt. 29). The Neumans filed a response in opposition, (Dkt. 32), and GISD filed a reply, (Dkt. 34). In its motion to dismiss, GISD seeks to dismiss the Neumans' second amended complaint for the same reasons it sought to dismiss their first amended complaint:

(1) failure to plead a Title VI claim, and (2) failure to follow the Individuals with Disabilities Education Act's ("IDEA") administrative exhaustion requirements. (Mot., Dkt. 29, at 7).

## II. LEGAL STANDARDS

### A. Administrative Exhaustion under the IDEA

The IDEA requires plaintiffs to exhaust a state administrative process before filing an action in federal court. 20 U.S.C.A. § 1415(b), (f), (g); *Fry v. Napoleon Cnty. Sch.*, 137 S. Ct. 743, 749 (2017). IDEA exhaustion applies to actions filed "under the ADA, the Rehabilitation Act, or similar laws." *Fry*, 137 S. Ct. at 752. Courts have previously held that Title VI is a "similar law" to which IDEA exhaustion can apply. *See, e.g.*, *Hope v. Cortines,* 872 F. Supp. 14 (E.D.N.Y. 1995), *aff'd*, 69 F.3d 687 (2d Cir. 1995). IDEA's "administrative exhaustion requirement applies *only* to suits that see[k] relief ... also available under IDEA." *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 148 (2023) (internal quotations omitted). Although "the earliest possible time to consider" such a defense "would normally be after the answer has been filed," the Court can consider the defense under Rule 12(b)(6) and grant relief "if the allegations of the complaint in the light most favorable to the plaintiff show that there is no way that any amendment could salvage the claim." *Mosely v. Bd. of Educ. of City of Chicago,* 434 F.3d 527, 533 (7th Cir. 2006); *see also Clyce v. Farley*, 836 F. App'x 262, 267 (5th Cir. 2020) ("[D]ismissal under Rule 12(b)(6) is appropriate if the [affirmative defense] is apparent on the face of the pleadings.").

### B. Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To

survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

#### A. Plaintiffs' Complaint Remains Unclear as to Whether IDEA Applies

In its order dismissing the Neumans' first amended complaint but allowing for amendment, the Court advised the Neumans that it was unclear whether IDEA—and its administrative exhaustion requirement—applied to their complaint. (Order, Dkt. 26, at 3–5). IDEA's "administrative exhaustion requirement applies *only* to suits that see[k] relief ... also available under IDEA." *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 148 (2023) (internal quotations omitted). The

5

Neumans' first amended complaint stated that they sought "an award of damages adequate to compensate Plaintiffs for the harm they have suffered." (Am. Compl., Dkt. 18, at 14). However, the only damage they allege is that "[B.N.]'s parents are now paying a substantial annual tuition to her new [private] school at great financial cost and burden to themselves and their family" due to the racially hostile environment at Benold Middle School. (*Id.* at 13). Private school tuition is available as relief under the IDEA. 20 U.S.C. §1412 (a)(10)(C); 34 C.F.R. § 300.148(c). Ultimately, the Court found that it need not consider whether IDEA applied, as the Court dismissed the first amended complaint under Rule 12(b)(6). (Order, Dkt. 26).

In their second amended complaint, the Neumans have not clarified whether they are seeking private school tuition. They once again ask for "an award of damages adequate to compensate Plaintiffs for the harm they have suffered" without further details about whether that harm is the cost of private school or something else entirely. (*See* 2d. Am. Compl., Dkt. 27, at 12; *see also id.* at 3 (the Neumans "have to pay an annual tuition" to B.N.'s private school)). If IDEA does apply, the Neumans must exhaust their state administrative process before filing an action in federal court, which they have not done. 20 U.S.C.A. § 1415(b), (f), (g); *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 749 (2017). GISD contends that the Neumans' Title VI claim in their second amended complaint is indeed subject to IDEA exhaustion because "[t]he crux of Plaintiff's claim remains the denial of an educational benefit, a denial of [a free and public education], and [they] seek relief in the form of private school tuition, an IDEA remedy." (Mot., Dkt. 29, at 26). Regardless of whether the Neumans seek private school tuition, the Court once again finds that the question of whether IDEA exhaustion applies to the Neumans' claims is moot because the Court again finds that their complaint fails to state a plausible claim for relief, as discussed below.

6

**B. Plaintiffs Fail to Sufficiently Plead a Title VI Claim**

Title VI prohibits discrimination on the basis of race, color or national origin "under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI prohibits only intentional racial discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015). Thus, to state a Title VI claim, a plaintiff must plead facts to establish intentional discrimination and set forth specific allegations of acts that were taken with discriminatory intent. *Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602 (N.D. Tex. 2017) (citing *Sandoval*, 532 U.S. at 281). These facts can either be direct or circumstantial evidence of intentional discrimination in violation of Title VI. *Familias Unidas Por La Educacion v. El Paso Indep. Sch. Dist.*, No. EP-20-CV-170- DB, 2022 WL 4923349, at *3 (W.D. Tex. Oct. 3, 2022).

Although the exhibits attached to the Neumans' second amended complaint suggest that they believe GISD staff harassed B.N. because of her race, color, and/or national origin, the second amended complaint itself only alleges that other students racially harassed B.N. and that GISD was indifferent to this harassment. The Neumans plead that "[a]dministrators and teachers who work for GISD acted with willful intent on behalf of GISD by approving of, allowing, condoning, and encouraging racist behavior against [B.N.] by students who attended Benold Middle School." (2d. Am. Compl., Dkt. 27, at 3). They further plead that "when these horrific racist attacks were brought to the attention of the administrators and teachers working on behalf of Defendant GISD and were informed of the traumatic effects the racist actions were having on [B.N.], Defendant GISD and those working on behalf of Defendant GISD failed to respond appropriately and created a hostile environment." (*Id.*). "A school district receiving federal funds may be liable for student-on-student harassment if (1) the harassment was 'so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to educational opportunities or benefits provided by the school' (a racially hostile environment), and the district (2) had actual knowledge, (3) had 'control over the

7

harasser and the environment in which the harassment occurs,' and (4) was deliberately indifferent." *Fennell*, 804 F.3d at 408 (citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644 (1999)).

The Neumans successfully plead three of these four elements: (1) severe harassment that created a racially hostile environment, (2) actual knowledge, and (3) control over the harasser and the environment. First, in order for student-on-student harassment to be "severe, pervasive, and objectively offensive," it must "be more than the sort of teasing and bullying that generally takes place in schools." *Fennell*, 804 F.3d at 409 (internal citations omitted). The Fifth Circuit has held that "repeatedly being referred to by one's peers by the most noxious racial epithet in the contemporary American lexicon, and being shamed and humiliated on the basis of one's race is harassment far beyond normal schoolyard teasing and bullying." (*Id.*) (cleaned up). The Neumans plead that B.N. was called a "monkey" and a "n*****" and told to "go pick cotton" by other students on multiple occasions. (2d. Am. Compl., Dkt. 27, at 5). This behavior clearly surpasses normal schoolyard teasing. The student-on-student harassment must also have a "concrete, negative effect on the victims' education . . . such as . . . forcing the student to . . . move to another district." *Fennell*, 804 F.3d at 410 (internal citations omitted). The Neumans indeed state that B.N., traumatized by the harassment, switched to a private school. (2d. Am. Compl., Dkt. 27, at 10). GISD contends that the Neumans only plead two specific instances—one in which another student repeatedly called B.N. a "monkey" and one in which an unidentified student called her a "n*****." (Mot., Dkt. 29, at 11). Thus, GISD argues the Neumans have not shown repeated and frequent harassment that would be considered severe, pervasive, and objectively offensive. The Court disagrees; at this early stage in litigation, the Court takes the facts in the second amended complaint as true, and it finds that the Neumans plead sufficient facts to show severe, pervasive, and objectively offensive student-on-student harassment.

Second, the Neumans sufficiently plead that GISD had actual knowledge of the alleged student-on-student harassment. A school district has knowledge if "a district official with authority to address the discrimination did." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 585 (5th Cir. 2020) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). In their second amended complaint, the Neumans allege that they notified Principal Jayroe of a specific incident where a student called B.N. a "monkey" around May 17, 2022. (2d. Am. Compl., Dkt. 27, at 5). They also state that Principal Jayroe "was fully notified prior to conducting his sham 'investigation' that there were multiple other incidents where [B.N.] was subjected to racist epithets and slurs." (*Id.*). On June 1, 2022, the Neumans' attorney sent a long letter to GISD's counsel that notified GISD of several instances of students using racial slurs against B.N. (*See* Ex. B, Dkt. 27 at 20). GISD argues that it did not have actual knowledge of anything other than the use of the word "monkey" to refer to B.N. on two different occasions until after the school year was over and B.N. had left GISD for good. (*See* Mot., Dkt. 29, at 21). However, GISD's argument completely disregards the Neumans' allegation that Principal Jayroe was aware of the harassment "prior to the first investigation and assumes that B.N. had already decided by June 1, 2022 not to return to GISD the following school year, a fact that is not pleaded anywhere in the complaint.

Third, GISD does not contend that it did not have control over the alleged harassers or the environment in which the harassment occurred. Therefore, the Court will not engage in a full analysis on this element, but it notes that it finds that the Neumans sufficiently plead in their second amended complaint that GISD had control over its students and the classroom environment in which the alleged harassment occurred.

However, the Neumans fail to sufficiently plead the fourth factor, that GISD was deliberately indifferent to the students' racial harassment of B.N. A school district should be deemed deliberately indifferent to student-on-student harassment "only where the recipient's response to the

9

harassment or lack thereof is clearly unreasonable in light of the known circumstances. Mere negligence will not suffice." *Fennell*, 804 F.3d at 410 (citing *Davis*, 526 U.S. at 642, 648). Therefore, a school district "may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, even if the harm ultimately was not averted." *Fennell*, 804 F.3d at 410 (internal citations omitted). As GISD correctly argues in its motion to dismiss, GISD responded reasonably to the Neumans' complaints of student-on-student harassment. (See Mot., Dkt. 29, at 18 ("In response to Plaintiff's allegations of student-on-student racial harassment, GISD launched an investigation that included a written statement from BN, two statements from the student alleged to have made the comment, statements by six other students gathered via individual interviews, statements from two general education teachers who were identified in [BN's] statement, and a statement from the substitute teacher facilitating the dyslexia class.") (internal citations omitted)). After the Neumans' attorney contacted GISD with further complaints of harassment on June 1, 2022, GISD again responded reasonably by having the director of human resources conduct a second investigation into the harassment that included verifying the first investigation. (2d. Am. Compl., Dkt. 27, at 8–9). This second investigation included four witness interviews, a review of B.N.'s disciplinary record, and fifty emails between GISD employees and the Neumans or their counsel. (*See* Mot., Dkt. 29, at 20; Ex. C, Dkt. 27).

      The Neumans cannot sufficiently plead deliberate indifference by pleading that the investigations came to the wrong result. Fifth Circuit precedent "makes it clear that negligent delays, botched investigations of complaints due to the ineptitude of investigators, or responses that most reasonable persons could have improved upon do not equate to deliberate indifference." *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) (internal quotations removed). Nor can the Neumans meet their pleading burden by making conclusory allegations that the investigations were "shams" and that Harrison was a "crack" investigator. (2d. Am. Compl., Dkt. 27, at 8).

The Neumans seem to be suggesting in their response to GISD's motion to dismiss that the investigations would have come out differently if B.N. were not a student of color, although they do not actually allege this in their second amended complaint. (See Resp., Dkt. 32, at 14 ("This deliberately indifferent action by Defendant GISD was meant to ensure that [B.N.] would continue to suffer racial harassment.")). However, the Neumans do not plead a single fact showing that GISD or its employees had racial animus that influenced their decision-making in the investigations. "[T]he primary issue in Title VI cases is not whether a recipient of federal funding made an erroneous decision, but whether that decision was made with discriminatory motive." *Gonzalez v. Northside Indep. Sch. Dist.*, No. SA-20-CV-00926-XR, 2020 WL 5640459, at *4 (W.D. Tex. Sept. 22, 2020). For example, the Neumans do not plead that any student of a different racial background was treated differently in response to reports of student-on-student harassment or that GISD employees themselves ever used racial slurs against B.N. Thus, the Court cannot find that the Neumans sufficiently plead either GISD's deliberate indifference to the alleged student-on-student harassment or that GISD itself discriminated against B.N. due to racial animus.

## IV. CONCLUSION

Because the Neumans' second amended complaint fails to sufficiently plead that GISD was deliberately indifferent to the alleged student-on-student harassment or that GISD acted with a discriminatory motive in conducting its investigations, the Court must dismiss the Neumans' Title VI claim against GISD. Therefore, **IT IS ORDERED** that GISD's Motion to Dismiss, (Dkt. 29), is **GRANTED**.

The Neumans have already filed two amended complaints. (Dkts. 18, 27). The Court has already dismissed their first amended complaint without prejudice and allowed for amendment. (Dkt. 26). The Neumans' second amended complaint had the same deficiencies as the first amended complaint. Accordingly, the Court finds that further amendment would be futile. **IT IS FURTHER**

**ORDERED** that the Neumans' Second Amended Complaint, (Dkt. 27), is **DISMISSED WITH PREJUDICE**.

**SIGNED** on February 8, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE